**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SELF, INC. and L & R REALTY, INC.** | : | CASE NO. 3:20-CV-252 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **TOWN OF WOLCOTT**, | : | |
| | : | |
| Defendant | : | |

**COMPLAINT**

**I.      INTRODUCTION**

1.      SELF, Inc. ("SELF") and L & R Realty, Inc. ("L & R") bring this complaint against the Town of Wolcott and its Planning and Zoning Commission ("Town" or "Wolcott") for discriminating against them and SELF's clients on the basis of disability in violation of federal anti-discrimination laws, including the Fair Housing Act, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973, from 2015 until the present.

2.      Beginning in 2015 and culminating in June 2016, SELF and L & R sought from the Town of Wolcott a special use permit to operate 159 Old Bound Line Road as a home for older adults with mental health disabilities. From the start, community opposition organized to stop the group home because of the mental health disabilities of its proposed residents. For example, at the very first public hearing on their original application in 2015, members of the community expressed concern about the type and severity of mental illnesses of the residents, concerns which the Defendant eventually acted upon.

1

3.      In May 2016, with full knowledge of the pendency of Plaintiffs' application and eligibility for a special use permit under the existing zoning regulations, the Town of Wolcott amended its zoning laws and regulations in such a way so as to disqualify Plaintiffs' use of the property at Old Bound Line Road—as well as any other any community residence serving adults with disabilities—as a permitted use within the town. At the same meeting during which Defendant adopted its new zoning rules and regulations, Defendant scheduled Plaintiffs' application for a public hearing. Later, at the public hearing, neighborhood residents again expressed concern about the "kind of . . . people" who would be in the house and their mental health. Defendant subsequently denied the application in reliance on the amended zoning laws and community opposition.

4.      Because Plaintiffs had submitted their application for a special use permit to Defendant while the original zoning regulations were in effect, Plaintiffs were entitled as a matter of right to a special use permit under the previous version of the zoning regulations. Nevertheless, Defendant still denied their application.

5.      And although the Town Attorney informed the Defendant Zoning Board that it was within its discretion to permit the Plaintiffs' group home, the Defendant rejected Plaintiffs' request for accommodations to its zoning regulations, both under the previous regulations and under the new regulations, and  rejected Plaintiffs' application based on stereotypes about the individuals who would reside in the property and based on the perceived severity of these individuals' disabilities. These decisions by the Town of Wolcott violated the Fair Housing Act, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973.

## II.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Each of those laws also individually confer subject matter jurisdiction on this Court; *see* 28 U.S.C. § 3613; 42 U.S.C. § 12133; 29 U.S.C. § 794a.

7.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202, and 1343, and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

8.    Under 28 U.S.C. § 1391(b), venue is proper in the District of Connecticut because all events and omissions giving rise to Plaintiffs' claims occurred in this District and all parties reside in this District.

## III.    PARTIES

9.    SELF is a non-profit agency that provides supportive community-based residential living for older adults with mental health disabilities under contract from the State of Connecticut Department of Mental Health and Addiction Services ("DMHAS"). L & R is a real estate company that purchased and renovated a house at 159 Old Bound Line Road, Wolcott, CT for the purpose of leasing it to SELF for use as a residential group home for thirteen clients.  159 Old Bound Line Road had originally been built, zoned for, and operated as, a group home for adolescent girls with mental illness/disabilities.  It operated as such for more than 20 years.

10.    Wolcott is a Connecticut municipality.  The Wolcott Planning and Zoning Commission is a five-member board responsible for the adoption of the zoning and subdivision regulations, updating and revising land use regulations, and reviewing special use permits, site

plan applications, and applications for development. For purposes of this action, the Zoning

Commission acted on behalf of, and as the lawful agent of, the Town of Wolcott. Upon

information and belief, Wolcott received $300,000 in Community Development Block Grant

funding in 2015, and is a recipient of federal financial assistance within the meaning of the

Rehabilitation Act of 1973.

## IV.   FACTS

### Wolcott Obstructed SELF's Proposed Group Home at 159 Old Bound Line Road Because of Stereotypes about SELF's Disabled Clients and Because of Community Opposition to Them

11.     In the fall of 2015, SELF and L & R applied to Defendant Town of Wolcott for a

special use permit to operate 159 Old Bound Line Road as a home for older adults with mental

health disabilities. The application was widely publicized, and Defendant scheduled a public

hearing on the application for October 21, 2015.  At this hearing, a number of community

residents appeared and expressed opposition to the characteristics of the proposed residents,

including the "type of mental illness [and] severity of their illnesses."

12.     Plaintiffs withdrew their initial application to resolve some construction and fire

system issues and to seek a state license as demanded by the Town, and resubmitted a new

application to the Defendant on March 31, 2016.  Under the Defendant's zoning regulations in

effect at the time, Plaintiffs had a conditional right to the special use permit. The property in

question already had a special use permit that had been approved in 1992 for use of the property

as a group home for adolescents with disabilities. Plaintiffs' special use application differed only

with respect to the ages of the prospective residents (from adolescents to adults) and an increase

in the number of occupants (from 8 to 13). At the time of Plaintiffs' renewed 2016 application,

Defendant's zoning regulations allowed adults to live in community residences and allowed up to 15 residents to live in Community Residences.

13.     Defendant held a number of public hearings on Plaintiffs' 2016 application. Once again, community opposition organized to stop the group home because of the mental health disabilities of its proposed residents.

14.     On June 1, 2016, Defendant denied Plaintiffs' application to operate 159 Old Bound Line Road as a home for elderly and older adults with mental health disabilities. Although the Town Attorney informed the Defendant Zoning Board that it was within its discretion to permit the Plaintiffs' group home, the Defendant rejected Plaintiffs' special use application based on stereotypes about the individuals who would reside in the property and based on the perceived severity of these individuals' disabilities. For example, Defendant expressly grounded its decision on the fact that the residents received assistance with medication management and used the services of a visiting nurse. Defendant also denied the application in response to concerns expressed by neighbors of the property about the types of diagnoses residents had.

**Defendant Amended Its Zoning Regulation in Retaliation for Plaintiffs Asserting Their Rights**

15.      In addition to denying Plaintiffs' special use request pertaining to the proposed Old Bound Line Road property, while Plaintiffs' special use application was pending, the Defendant enacted a new regulation that now prohibits the operation of any group living for adult individuals with disabilities in Wolcott.

16.     Wolcott's zoning regulations provide for residential group homes as "community residences." At the time of Plaintiffs' application, Defendant defined community residence as:

> A dwelling or part of a dwelling occupied by individuals who have a mental, physical or emotional disability, which contains no fewer than seven (7) but in no case more than 15 residents in any one dwelling who do not receive any special medical care or supervision,

but are supervised by at least one staff person. A community residence shall be licensed under the provisions of Sec. 19-574 or 17a-145 of the C.G.S.

17.     The State code referenced in this former provision relate to facilities for individuals with intellectual disabilities (former Sec. 19-574, now repealed) and child care facilities (Sec. 17a-145).

18.     After hearing community opposition to Plaintiffs' proposed residence at 159 Old Bound Line Road, and while Plaintiffs' application to house 13 older adults with mental illness diagnoses was still pending, on May 4, 2016, Wolcott amended its community residence regulation to reduce the number of individuals who may reside in a group home setting and to limit the availability of group home living in Wolcott to juveniles only. Specifically, the new zoning regulation enacted by Defendant cuts in half the number of residents who can live in a community residence, and only permits group homes that are licensed to serve children under Conn. Gen. Stat. § 17a-145. No homes for adults with disabilities can now qualify as a community residence under Wolcott's zoning regulations.

19.     By enacting a new ordinance that effectively eliminated Plaintiffs' ability to operate a group home for disabled adults as a permissible use, Defendant retaliated against Plaintiffs for asserting their rights.

20.     In addition, Defendant's amended zoning regulation no longer allows Community Residences serving disabled adults as a permitted use. Defendant's zoning regulations also do not have a process for seeking accommodations or modifications for housing serving people with disabilities. It therefore is discriminatory on its face.

**Defendant Unlawfully Denied Plaintiffs' Requests for Accommodations**

21.     Separate and apart from their absolute right to a special use permit to operate 159 Old Bound Line Road as a home for Older adults with mental health disabilities, Plaintiffs'

request for a special use permit constituted a request for accommodation or modification within the meaning of the Fair Housing Act and the Americans with Disabilities Act. Thus, the Defendant was required under these laws to grant Plaintiffs' request for a special use permit to use and operate 159 Old Bound Line Road as a home for older adults with mental health disabilities.

22.     Plaintiffs' request would not fundamentally alter the nature of the Defendant's zoning requirements. At the time of the application, Wolcott's zoning regulations permitted community residences licensed under state statute for up to fifteen individuals with disabilities. Setting aside whether Wolcott's requirement of specific licensure for group homes for individuals with disabilities facially violated fair housing laws by discriminating based on type of disability, SELF sought and secured a license from the State of Connecticut for its property consistent with the Town's zoning scheme for community residences.  SELF asked the Town to consider its Department of Health license as comparable to the license provisions of the Town's regulations which referenced out-of-date provisions of the Connecticut General Statutes.  The Town refused to accept the license secured by SELF, citing it as a basis for denying the application, despite the fact that doing so would impose no undue burden or fundamental alteration on the Town or its zoning regulations.

23.     Defendant's actions have thwarted SELF's efforts to fulfill DMHAS's objective to provide community-based supportive housing in compliance with Connecticut's obligations under Title II of the Americans with Disabilities Act as set forth in *Olmstead v. L.C.,* 527 U.S. 581 (1999).

24.     Defendant has eliminated housing opportunities for individuals with disabilities in a high opportunity area, perpetuating the concentration of supportive housing in Connecticut's

urban centers, which have higher rates of poverty.  In doing so, Defendant has violated the FHA and Section 504 of the Rehabilitation Act.

25.     Defendant' actions have re-introduced discrimination in the housing market and fostered the notion that relying on stereotypes and discriminating against individuals based on their disabilities is lawful and permissible.

26.     Through its conduct, Defendant has denied Plaintiffs equal access to the benefit of government programs in violation of the ADA.

27.     On or about March 3, 2017, Plaintiffs L & R Realty and SELF filed a complaint with the U.S. Department of Housing and Urban Development against the Defendant alleging discrimination because of disability in violation of the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. That administrative complaint remains pending.

## V.     INJURIES TO PLAINTIFFS

28.     As a result of the Defendant' unlawful actions, Plaintiffs have suffered, continue to suffer, and will in the future suffer, great and irreparable loss and injury, including, but not limited to, economic losses, injury to reputation, interference with their ability to carry out their missions to provide supportive community-based residential living for individuals with mental health disabilities, and deprivation of their ability to serve potential residents with disabilities in the Town of Wolcott.

29.     Plaintiffs have experienced significant hardship due to Defendant's public hostility to their operations and the continuing course of the Town's actions to stop Plaintiffs' proposed use of the house on Old Bound Line Road in direct response to discriminatory community opposition. They fear that a home supportive of community-based residential living

for older adults with mental health disabilities at the Old Bound Line Road property will not be permitted to open at all without additional cost or burdensome application procedures.

30.     Plaintiffs reasonably believe that the Town will continue to discriminate against them and adopt further zoning regulations or zoning requirements that unreasonably restrict housing opportunities for people with disabilities and that will hinder the operation of community-based residential living for older adults with mental health disabilities anywhere in the Town of Wolcott, notwithstanding the strong demand and need for such settings in the area.

31.     Unless enjoined, Defendant and its agents will continue to engage in unlawful discrimination, with the purpose and effect of preventing Plaintiffs from providing housing to individuals with disabilities in the Town of Wolcott, and otherwise preventing or limiting the operation of supportive community-based residential living for older adults with mental health disabilities in Wolcott.

32.     Plaintiffs have no adequate remedy at law and are now suffering, and will continue to suffer, irreparable injury from the Defendant's discriminatory acts unless relief is provided by this Court.

33.     L&R Realty purchased the Old Bound Line Road house for $275,000 and invested more than $250,000 in renovations and improvements for the express purpose of leasing it to SELF for use as a residential group home. Because the Town's discriminatory actions have prevented L&R Realty from leasing the house to the organization and using the house for its intended purpose, Plaintiff L&R Realty has suffered significant financial losses arising from the purchase and continued carrying and maintenance costs for the property. Plaintiff L&R Realty has also experienced administrative costs associated with the Defendant's opposition to the house on Old Bound Line Road and countering the discriminatory practices that it experienced.

34.     As a result of the Town's discriminatory actions, SELF, Inc. has been unable to offer desirable housing and supportive services to its clients.

35.     Defendant's actions to obstruct the operation of the house on Old Bound Line Road and to undermine the Plaintiffs has caused significant reputational harm to them, putting them at a disadvantage with respect to future service contracts, opportunities, charitable contributions, and development projects.

36.     Defendant's actions have thwarted SELF's efforts to fulfill their objective to provide community-based living housing in compliance with Connecticut's obligations under Title II of the Americans with Disabilities Act as set forth in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

37.     By making and endorsing statements indicating that people with disabilities should not live in residential neighborhoods, Defendant has conveyed to people with disabilities and to the general public that discriminatory animus against people with disabilities is legal and/or acceptable in the housing market.

38.     By requiring a special use permit, refusing to approve an application for a special use permit for housing with up to thirteen  residents with disabilities, and by prohibiting the siting of group homes in the areas of Town of Wolcott zoned R-1 and R-2, the Defendant has otherwise denied and withheld housing and excluded persons from participating in housing because of the disabilities of the potential residents.

39.     By denying Plaintiffs' request for an exception to the special land use permitting process and to the restriction on locating community-based living in areas zoned R-1 and R-2, the Defendant has refused to make a reasonable accommodation or modification in a policy, practice, or rule as required by federal civil rights laws.

40.     Defendant, directly and through its representatives and agents, discriminated against the Plaintiffs because of the disabilities of the residents that were expected to live in the house on Old Bound Line Road. The Town of Wolcott continues to engage in this discriminatory behavior so as to constitute a continuing violation against the Plaintiffs.

41.     Defendant's conduct was willful, intentional, and taken in reckless disregard of the Plaintiffs' rights.

42.     Plaintiffs have no adequate remedies at law. They are now suffering and will continue to suffer irreparable injury from the Town's acts and from its discrimination against them based on disability unless relief is provided by this Court. Accordingly, they are entitled to injunctive relief.

## FIRST CAUSE OF ACTION

### Federal Fair Housing Act, 42 U.S.C. 3601 *et seq.*

43.     Plaintiffs reallege and incorporate by reference all above paragraphs, as if fully set forth herein.

44.     Defendant' actions described in this Complaint amount to unlawful disability discrimination in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations at 24 C.F.R. Part 100. In passing the Fair Housing Amendments Act of 1988, Congress explicitly called for an end to zoning restrictions that limit housing opportunities for people with disabilities to live in communities and rejected the idea the assumptions and misunderstandings about people with disabilities who might reside there can serve as the basis for adverse action or exclusion.

45.     The FHA "is a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream. It repudiates

11

the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion…" H.R. Rep. No. 711, 100th Cong., 2d Sess. 18 (1988), reprinted at 1988 U.S. Code Cong. & Admin. News 2173, 2179.

46.     Defendant injured Plaintiffs in violation of the FHA by committing the following discriminatory practices:

a.      Discriminating or otherwise making housing unavailable because of a disability, in violation of 42 U.S.C. § 3604(f)(1);

b.      Discriminating in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

c.      Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

d.      Making, printing, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based handicap, or an intention to make any such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c).

e.      Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

47.     Defendant's actions were intentional, wanton, malicious, and done in reckless disregard of the Plaintiffs' civil rights.

## SECOND CAUSE OF ACTION

### Titles II and V of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, 12132, 12203(a)-(b)

48.     Plaintiffs reallege and incorporate by reference all above paragraphs, as if fully set forth herein.

49.     The Town's actions similarly violate the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*., and its implementing regulations at 28 C.F.R. Part 35. These laws require the Town to administer all of its programs and activities—including its legislative, executive, zoning, and code enforcement functions—in a manner that does not discriminate on the basis of disability, and to "administer [its] services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

50.     The Town has injured the Plaintiffs in violation of Titles II and V of the ADA by committing the following discriminatory practices:

a.      Subjecting to discrimination or excluding a qualified individual with a disability, by reason of such disability, from participation in or denying that person the benefits of services, programs, or activities of a public entity in violation of 42 U.S.C. §§ 12131 and 12132;

b.      Refusing to make reasonable accommodations or modifications in rules, policies, or practices, in violation of 42 U.S.C. §§ 12131 and 12132;

c.      Retaliating or otherwise discriminating against an individual because such person has opposed any act or practice made unlawful by the ADA or because such individual assisted or participated in any manner in an investigation, proceeding, or hearing under the ADA, in violation of 42 U.S.C. § 12203(a); and

13

d.      Coercing, intimidating, threatening, or interfering with an individual's exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of 42 U.S.C. § 12203(b).

51.    Defendant's actions were intentional, wanton, malicious, and done in reckless disregard of the Plaintiffs' civil rights.

### THIRD CAUSE OF ACTION

### Section 504 of the Rehabilitation Act of 1973

52.    Plaintiffs reallege and incorporate by reference all above paragraphs, as if fully set forth herein.

53.    Defendant discriminated and continues to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by acting in a manner that, among other things:

a.   Denies meaningful access to community-based housing for people with disabilities in the Town of Wolcott;

b.   Aids or perpetuates discrimination against people with disabilities;

c.   Uses methods of administration that discriminate against people with disabilities, by failing to ensure that such people have meaningful access to housing in the Town of Wolcott;

d.   Otherwise limits people with disabilities from enjoying housing or the opportunity to obtain such housing in the Town of Wolcott by engaging in the policies, practices, acts, and omissions described above.

54.    Defendant's actions were intentional, wanton, malicious, and done in reckless disregard of the Plaintiffs' civil rights.

55.     As a result of the discrimination alleged above, Plaintiffs have sustained the injuries described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1) Enter a declaratory judgment finding that the foregoing actions of Defendant violates the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

(2)  Enter a permanent injunction directing Defendant and its officials, administrators, employees, and agents to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3) Award compensatory damages to Plaintiffs in an amount that would fully compensate them for economic losses, injury to reputation, interference with their ability to carry out their mission to serve people with disabilities in integrated, community-based settings, and deprivation of their ability to serve clients in high-opportunity neighborhoods;

(4) Award Plaintiffs punitive damages in an amount to be determined at trial that will punish Defendant for its intentional, malicious, willful, callous, wanton, and reckless disregard for Plaintiffs' rights, and would effectively deter Defendant from engaging in similar conduct in the future;

(5) Award Plaintiffs reasonable attorneys' fees and costs as allowed by law; and

(6) Order such other relief as this Court deems just and equitable.

DATED: February 24, 2020                    Respectfully submitted,

                                            /s/ Greg Kirschner
                                            Greg Kirschner (ct26888)
                                            Connecticut Fair Housing Center, Inc.
                                            60 Popieluszko Ct.
                                            Hartford, CT 06106
                                            (860) 263-0724
                                            gkirschner@ctfairhousing.org

                                            Stephen M. Dane
                                            *Application to appear pro hac vice to be
                                            submitted*
                                            DANE LAW LLC
                                            312 Louisiana Ave.
                                            Perrysburg, OH 43551
                                            (419) 873-1814
                                            sdane@fairhousinglaw.com